## CIRCUIT COURT OF THE CITY OF RICHMOND

Timothy Lane Hunter

v.

E. Taylor Moore, Jr.

June 22, 1990

Case No. LR-3675-3

By JUDGE T. J. MARKOW

This matter is before the court on defendant's Worker's Compensation plea.

Plaintiff was injured while sandblasting a water tower on property owned by defendant. Defendant claims this work was a part of his trade, business, or occupation and moves to dismiss on the basis that plaintiff's sole remedy is under the worker's compensation law; therefore, this court is without jurisdiction over the action. The court has heard evidence on the issues and makes the following findings.

Defendant owns property which was formerly used as a manufacturing plant. He conducts several businesses; some at the property. He operates a specialty wood manufacturing business on the property, he operates a construction company from the property, he is in the real estate development business (one of his developments is the property), and he demolishes and rehabilitates textile manufacturing plants (obviously, not on the property). He employs sixteen to twenty-two people in the specialty wood business.

Defendant purchased and planned to develop the property by rehabilitating old buildings on the property and building new ones for lease to various industrial tenants. The project was funded with industrial development bonds. Most, if not all, of the rehabilitation and construction was

performed by employees of the defendant. He owns many pieces of heavy construction equipment which were used in this and other projects. His employees are involved in maintaining the equipment, as well as the structures on the property.

Several tenants occupy buildings on the property. The buildings are equipped with a sprinkler system. An integral part of the sprinkler system is the water tower. Defendant is obligated under the leases to maintain the sprinkler system.

As part of the rehabilitation and maintenance of the property, defendant planned to prepare and paint the 120-foot water tower. At the time, his employees were "spread thin" making the painting project difficult. He was contacted by one Cleary, who had done other work on a part-time basis, about Cleary's purchase of construction materials. During that meeting, Cleary and the defendant talked about preparing and painting the water tower. Because of the availability of Cleary, the price he agreed to charge, and the unavailability of defendant's employees, Cleary was retained to do the work. Cleary secured the services of the plaintiff to help him on the project.

Cleary and the plaintiff were working full-time on a highway construction project and were available only on weekends. They, along with others, were planning to use defendant's crane to hoist men up and along the water tower so that the work could be performed. They borrowed sandblasting equipment from their regular employer.

Defendant came to the property on the Saturday of the accident and noticed the Cleary crew getting ready to begin the work. He quickly determined that none of the crew was capable of operating the crane safely and, therefore, assumed its operation.

Plaintiff and another with their equipment were hoisted up. As defendant could not see plaintiff, another crew member was on the ground who received signals from plaintiff regarding their wishes on movement of the crane. The signals were then relayed to defendant who would move the crane.

After a while, defendant had to leave the crane to go to the bathroom. While gone, the signalman tried to move the crane, causing the release of the bucket containing

the plaintiff, resulting in its fall and plaintiff's severe injuries.

Plaintiff is barred from recovery from the defendant if it is found that the injuries resulted while defendant had undertaken "to perform or execute any work which is a part of his trade, business, or occupation" by subcontract with plaintiff or his employer, Cleary. Va. Code Ann. Section 65.1-29 through § 65.1-40.

The question is simply whether the cleaning, preparation, and painting of the water tower was a part of defendant's "trade, business or occupation." This question is a mixed question of law and fact and does not readily yield to categorical or absolute standards. *Henderson v. Central Telephone Co.*, 233 Va. 377, 355 S.E.2d 596 (1987).

A task is a part of one's trade, business, or occupation if (1) one customarily does that type of work himself or with his own employees, (2) one does not customarily perform that work but has an obligation to perform that type of work and subcontracts the work "to another", or (3) the work was performed by employees of the subcontractor side by side with employees of the owner. *Henderson v. Central Telephone Co.*, 233 Va. 377, 355 S.E.2d 596 (1987); *Shell Oil v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972); *Bassett Furniture Industries, Inc. v. McReynolds*, 216 Va. 987, 224 S.E.2d 323 (1976); and *Stewart v. Bass Construction Co.*, 223 Va. 363, 288 S.E.2d 489 (1982).

All three situations exist here. The painting of the water tower was a part of the maintenance and refurbishing of defendant's property normally done by his employees. His employees regularly and systematically made repairs to buildings, constructed and modified buildings, painted and repaired them. In their work, they regularly used heavy equipment such as the crane. They also used sandblasting equipment to prepare surfaces for painting. The court attaches no significance to plaintiff's claim that his sandblasting equipment was different from that of the defendant. The best that can be concluded from the evidence on this point is that the equipment may have been somewhat different in insignificant particulars, such as the nozzle and the type of compressor necessary to work at the heights involved. The differences have no legal significance as they do not change the essential character of the work.

Another indicia to assist in determining whether the work is the same trade, business, or occupation of the owner is whether the owner was obligated to do the work. *Henderson v. Central Telephone Co.*, 223 Va. 377, 355 S.E.2d 596 (1987). Admittedly, *Henderson* speaks to obligations imposed upon a public utility. Its logic is not limited to public utilities. The logic is that where there is imposed upon the owner an obligation to perform the work in which the worker was injured, there is at the very least a strong indication that the work is the owner's trade, business or occupation. Here the water tower was a part of the fire sprinkler system serving all the buildings on the property, several of which were leased. The leases obligated the owner to maintain the sprinkler system. Common sense tells us that painting structures such as the water tower is a necessary part of maintenance, as failure to paint results in deterioration and ultimate failure.

A final indicia is whether the work was done by the injured person alongside the employees of the owner. Here the work was done with the defendant himself. He was an integral part of the project because plaintiff's work crew did not have the knowledge or experience to operate the crane required to hoist them to the top of the tower. Defendant was not only working side by side, he was an indispensable member of the crew.

The court is convinced that the work plaintiff was engaged in when he was injured was part of the "trade, business, or occupation" of the defendant, that he has chosen to claim worker's compensation benefits, and, therefore, that is his exclusive remedy. This court is without jurisdiction to consider his claim. The motion for judgment must be dismissed.