Present: All the Justices

KESHA D. NAPPER
                                            OPINION BY
v.  Record No. 111300      JUSTICE DONALD W. LEMONS
                                         June 7, 2012

ABM JANITORIAL SERVICES – MID ATLANTIC, INC., ET AL.

              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                     Benjamin N.A. Kendrick, Judge

       In this appeal, we consider whether the Circuit Court of

Arlington County ("trial court") erred when it sustained the

plea in bar by ABM Janitorial Services – Mid Atlantic, Inc.,

ABM Janitorial Services – Southeast, LLC, and Monday Properties

Services, LLC (collectively, "the Defendants") and dismissed

with prejudice a personal injury suit brought by Kesha D.

Napper ("Napper"), based on its conclusion that Napper was a

statutory employee of the Defendants pursuant to the Workers'

Compensation Act ("the Act"), Code §§ 65.2-100 through -1310.

                      I. Facts and Proceedings Below

       In November 2000, Art Associates leased commercial space

in a building it owned in Arlington, Virginia, to Kastle

Systems, Inc. ("Kastle").  The parties subsequently executed

two addenda to the lease, the second of which was executed and

signed by Kastle and Art Property Associates, LLC ("Art").*  The

lease required Art to clean Kastle's office spaces as well as

_____

       * It would appear that "Art Associates" and "Art Property
Associates, LLC, a Delaware limited liability company" are the

the building's public areas daily. Pursuant to its responsibilities under the lease, Art hired Monday Properties Services, LLC ("Monday") to manage the property. Monday then contracted with American Building Maintenance to perform the required cleaning and maintenance for the building.

In January 2009, Napper, one of Kastle's employees, slipped during working hours in a puddle of liquid and was injured while walking through the building's lobby on her way from her office to the restroom. Napper subsequently received workers' compensation benefits as a result of her injury, and she filed suit in the trial court alleging negligence against ABM Janitorial Services – Mid Atlantic, Inc., ABM Janitorial Services – Southeast, LLC (together, "ABM"), and Monday.

In response to Napper's complaint, the Defendants filed a plea in bar, arguing that because Napper, a statutory employee, had been receiving workers' compensation benefits in connection with her injury, Napper's claims are barred by the workers' compensation exclusivity provision of Code § 65.2-307(A).

In support of their plea in bar, the Defendants argued that this case is similar to and should be decided similarly to this Court's opinion in Fowler v. Int'l Cleaning Serv., Inc., 260 Va. 421, 537 S.E.2d 312 (2000). Specifically, the

same entity; the parties make no mention of, and the record does not make clear, this discrepancy between the original lease and the second addendum to the lease.

2

Defendants argued that: (1) for the purposes of Napper's claims, Napper is the statutory co-employee of the Defendants; (2) the services provided by the Defendants "were an 'essential part' of Kastle's business"; and (3) the Defendants are not "strangers to the work" performed by Kastle. Accordingly, the Defendants argued that, just as this Court held the plaintiff's claims barred by the exclusivity provision of the workers' compensation statute under similar circumstances in Fowler, 260 Va. at 423-29, 537 S.E.2d at 312-16, Napper's claims are likewise barred and her "exclusive remedy is found in the workers' compensation statutes."

In response to the Defendants' plea in bar, Napper argued that she cannot be a statutory co-employee of the Defendants because she was not injured in the space leased by Kastle, but in the building's lobby, which no Kastle employee had any obligation to clean or maintain. Napper also argued that Kastle operated its space in the building as a call center, that its offices were not a place for receiving customers and clients as an essential part of its business, and that Kastle's employees' work did not include maintaining its space as an essential part of Kastle's business. Napper further argued that, unlike Fowler, where the plaintiff's injury occurred in a retail store for which the plaintiff's employer had contracted with a cleaning service to clean the store to aid in its

3

business serving its customers, and where the plaintiff employee's duties overlapped with those of the cleaning service, Napper worked in a call center, not a retail store, and was not required to perform any cleaning service or maintenance for Kastle. Accordingly, Napper argued that the Defendants' plea in bar must be denied.

The trial court held a hearing on the Defendants' plea in bar, at which evidence was introduced demonstrating that: (1) Kastle leased office space in a twelve and a half story office building occupied by multiple tenants; (2) Kastle occupied office space on five or six different floors, including the first floor where the building's main lobby was located; (3) Kastle operated twenty-four hours a day, seven days a week; (4) ABM cleaned Kastle's offices, pursuant to ABM's contract with Monday, as well as the common areas of the building five nights a week; (5) Kastle contracted directly with ABM for ABM to clean Kastle's kitchen; (6) Kastle contracted to have a person not employed by ABM clean on the weekends; (7) Kastle had "Windex, Clorox, toilet paper and paper towel[s]" in its suite; (8) the common areas, including the main lobby where Napper was injured, were accessible to all of the building's tenants and the general public; and (9) no Kastle employee had any obligations or responsibilities to clean the building's common areas or bathrooms.

4

Following the hearing on the Defendants' plea in bar, the trial court found that the Defendants "are not strangers to [Kastle's work]," "janitorial services . . . are an essential part of Kastle's business" and, as a result, Napper and the Defendants are statutory co-employees for purposes of the workers' compensation scheme. The trial court sustained the Defendants' plea in bar and dismissed Napper's complaint with prejudice.

Napper timely filed her notice of appeal, and we granted an appeal on the following assignments of error:

1. The Trial Court erred in granting Appellees' Plea in Bar that Kesha Napper's exclusive remedy is Workers' Compensation, finding that the Appellees were not "strangers to the work of Kastle Systems because the performance of janitorial and other cleaning services [would] be necessary for Kastle to perform anyway . . ."

2. The Trial Court erred in granting Appellees' [P]lea in Bar that Kesha Napper's exclusive remedy is Workers' Compensation, finding that the janitorial services provided by the Appellees were "an essential part of Kastle's business, thus, Appellant is a statutory fellow employee of Appellees."

3. The Court erred in granting Appellees' Plea in Bar that Kesha Napper's exclusive remedy is Workers' Compensation, finding that there was a sufficient factual predicate that cleaning services were an essential part of Kastle's business when there were no facts as to what was required of Kastle employees or what the business of Kastle was at this location other than to serve as a call center.

4. The Court erred in granting Appellees' Plea in Bar that Kesha Napper's exclusive remedy is Workers' Compensation, essentially ruling that the provision

5

of cleaning services is essential to the business of any commercial tenant in a commercial building.

## II. Analysis

### A. Standard of Review

It is well-settled that we review "questions of law de novo, including those situations where there is a mixed question of law and fact." Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co., 270 Va. 566, 574, 621 S.E.2d 114, 118 (2005).

We have stated that "[w]hether a person or entity is a statutory employee is a jurisdictional matter presenting a mixed question of law and fact that must be resolved in light of the facts and circumstances of each case." Fowler, 260 Va. at 425, 537 S.E.2d at 314. "Where, as here, the facts relevant to resolution of the jurisdictional issue are not in dispute, '[this Court] must determine whether the trial court correctly applied the law to those facts.'" Id. (quoting Cinnamon v. International Bus. Mach. Corp., 238 Va. 471, 474, 384 S.E.2d 618, 619 (1989)).

### B. The Trial Court Erred in Sustaining the Defendants' Plea in Bar

The Defendants' plea in bar asserted that Napper's action was barred by the Act's exclusivity provision found in Code § 65.2-307(A), which states:

6

> The rights and remedies herein granted to an
> employee when his employer and he have accepted
> the provisions of this title respectively to pay
> and accept compensation on account of injury or
> death by accident shall exclude all other rights
> and remedies of such employee, his personal
> representative, parents, dependents or next of
> kin, at common law or otherwise, on account of
> such injury, loss of service or death.

The exclusivity provision does not apply, however, to a common law action for an employee's injury or death against an "other party."  Code § 65.2-309; Fowler, 260 Va. at 425, 537 S.E.2d at 314.

The trial court applied the "stranger to the work" test when it sustained the Defendants' plea in bar, and the parties have not disputed that, with respect to the issue of whether the Defendants and Napper are statutory fellow employees, the "stranger to the work" test applies.

We have previously observed that the "stranger to the work" test "is derived from the language of Code § 65.2-309(A) . . . which recognizes the right of an injured worker to maintain a common law action for personal injury against an 'other party.' "  Id. at 426, 537 S.E.2d at 314.  We observed in Fowler that the "stranger to the work" test was first applied in Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73 (1946), and we stated:

> The remedies afforded the employee under the
> [A]ct are exclusive of all his former remedies
> within the field of the particular business, but

7

> the [A]ct does not extend to accidents caused by
> strangers to the business.  If the employee is
> performing the duties of his employer and is
> injured by a stranger to the business, the
> compensation prescribed by the act is available
> to him, but that does not relieve the stranger of
> his full liability for the loss . . . .

Id. (quoting Feitig, 185 Va. at 102, 38 S.E.2d at 75-76)

(emphasis omitted).  Accordingly, the "stranger to the work"

test requires that

> the facts of each case be analyzed to determine
> whether the defendant in a common-law action was,
> at the time of the plaintiff's injury, a stranger
> to the work in which the plaintiff was engaged.
> If the defendant was "no stranger," then he was
> not an "other party" within Code § [65.2-309],
> and the common-law action against him is barred
> by Code § [65.2-307(A)].

Whalen v. Dean Steel Erection Co., 229 Va. 164, 169, 327 S.E.2d

102, 105 (1985).  We later explained in Fowler that the

language from Whalen stating, "the work in which the plaintiff

was engaged," 229 Va. at 169, 327 S.E.2d at 105, means "the

work in which the plaintiff's employer was engaged."  260 Va.

at 427, 537 S.E.2d at 315.

Napper argues that the facts of this case are more akin to

those in Stone v. Door-Man Mfg. Co., 260 Va. 406, 537 S.E.2d

305 (2000) (decided the same day as our decision in Fowler)

than to those in Fowler.  In Stone, we addressed the question

"whether a worker in the employ of the owner of a manufacturing

business was a statutory fellow employee of the architect and

8

contractors involved in a construction project at the owner's plant." Id. at 409, 537 S.E.2d at 306.

We concluded in Stone that "'the work in which [Stone's] employer was engaged' was [Ford Motor Company's] 'particular business' of manufacturing and selling motor vehicles" and that "[t]he defendants were strangers to that business." Id. at 419, 537 S.E.2d at 311 (citing Feitig, 185 Va. at 102, 38 S.E.2d at 75; Whalen, 229 Va. at 169, 327 S.E.2d at 105). Accordingly, we held that Stone's common law action for personal injuries against the defendants was not barred. Id. It should be noted that in deciding Stone, we relied in large part upon our prior decisions in Feitig and Whalen. See Stone, 260 Va. at 415-20, 537 S.E.2d at 309-12.

In Whalen, the issue was "whether a general contractor's employee may bring a tort action against a subcontractor for personal injuries caused by the subcontractor's negligence on the job." 229 Va. at 166, 327 S.E.2d at 103. We applied the "stranger to the work" test and held that the worker's action was barred. Id. at 169, 327 S.E.2d at 105. In so holding, we stated that the subcontractor "was no stranger to the work in which [the plaintiff's] employer was engaged, but was, on the contrary, performing an essential part of it." Id.

Here, Napper argues that because the provision of cleaning and janitorial services, particularly as they relate to the

9

building's common areas, was not part of Kastle's business, it follows that the Defendants were strangers to Kastle's business and may be subject to her action for damages. We agree.

As we stated in Floyd v. Mitchell, 203 Va. 269, 274, 123 S.E.2d 369, 372 (1962):

> The test is not whether [a company], by engaging an independent contractor to perform some part of his business, thereby engages in the business of the independent contractor. It is whether the independent contractor is performing work that is part of the trade, business or occupation of the [company]. If he is, and in doing the work injures an employee of the [company], then the independent contractor, in the same fashion as any other employee of the [company], is not a third party against whom the injured employee's right of action is preserved; but the employee so injured is limited to the compensation provided by the Work[ers'] Compensation law . . . .

(Emphasis added.)

The issue in this case is whether the Defendants were "other part[ies]" under Code § 65.2-309 and therefore strangers to Kastle's "particular business" of operating a call center. Feitig, 185 Va. at 102, 38 S.E.2d at 75. Based on our prior holdings in Fowler and Whalen, in resolving the issue whether a particular person or entity constitutes an "other party" under Code § 65.2-309 and is, accordingly, a stranger to another person's or entity's particular business, in this case "a key consideration is whether, in providing . . . services to [Kastle], [ABM] was 'performing an essential part' of

10

[Kastle's] business."  Fowler, 260 Va. at 428, 537 S.E.2d at 315 (quoting Whalen, 229 Va. at 169, 327 S.E.2d at 105).

However, it is important to note that, while the parties have argued at great length regarding the essential nature of janitorial services as they relate to Kastle's business under the facts of this case, the test to determine whether the Defendants were "other part[ies]" under Code § 65.2-309 and, accordingly, strangers to Kastle's "particular business," Feitig, 185 Va. at 102, 38 S.E.2d at 75, is not merely whether the Defendants were performing a service "essential" to Kastle's business.  Fowler, 260 Va. at 427, 537 S.E.2d at 314; Whalen, 229 Va. at 169, 327 S.E.2d at 105; Floyd, 203 Va. at 274, 123 S.E.2d at 372.  Rather, the test is whether the Defendants were "performing work that is part of [Kastle's particular] trade, business or occupation."  Floyd, 203 Va. at 274, 123 S.E.2d at 372 (emphasis added); Feitig, 185 Va. at 102, 38 S.E.2d at 75.  While janitorial services may be considered essential to every business in the Commonwealth for obvious reasons, it does not follow that janitorial services are an essential part of every employer's particular trade, business or occupation.

In Fowler, we considered the question "whether the provision of cleaning and janitorial services is a part of an [employer]'s trade, business, or occupation."  260 Va. at 428,

11

537 S.E.2d at 315. We concluded that both the plaintiff's employer, Sears, and the company Sears hired to clean its store "were involved in cleaning Sears' premises." Id. Specifically, we noted that

> Sears' employees cleaned up spills, swept the warehouse floor, and carried trash to the dumpster. [The cleaning company]'s personnel cleaned bathrooms, mopped floors, stripped floors, and performed other cleaning functions. Sears' personnel used [the cleaning company]'s cleaning supplies and equipment, which were stored in a closet provided on Sears' premises. When [the cleaning company] stripped floors, Sears provided half the signs needed to warn of possible danger.
>
> The combined efforts of [the cleaning company] and Sears were designed to accomplish Sears' goal of making its store clean, attractive, and safe – a goal necessary to the successful operation of Sears' [retail] business. And, by its participation in those efforts, [the cleaning company] was "performing an essential part" of Sears' business.

Id. at 428, 537 S.E.2d at 315-16 (quoting Whalen, 229 Va. at 169, 327 S.E.2d at 105) (emphasis added). Accordingly, we held that the hired cleaning company was not a stranger to Sears' business and affirmed the trial court's decision that the plaintiff's action against the cleaning company was barred by Virginia workers' compensation law. Id. at 424, 428-29, 537 S.E.2d at 313, 316.

Unlike Fowler, however, the evidence in this case does not demonstrate that the Defendants were "performing work that is

12

part of [Kastle's] trade, business or occupation." See Floyd, 203 Va. at 274, 123 S.E.2d at 372 (emphasis added); Fowler, 260 Va. at 428, 537 S.E.2d at 315-16. Despite evidence that Kastle had "Windex, Clorox, toilet paper and paper towel[s]," there is no evidence that Kastle employees were required to or were, in fact, involved in performing any cleaning of Kastle's offices, let alone the building's common areas, including the bathrooms and the lobby where Napper was injured. Rather, the evidence demonstrated that Kastle employees were not allowed to clean the common areas or common bathrooms.

Moreover, unlike Sears in Fowler, there is no evidence that Kastle worked with the Defendants to make its offices clean, attractive, and safe. See id. at 428, 537 S.E.2d at 316. While such "a goal [was] necessary to the successful operation of Sears' [retail] business" in Fowler, there is no evidence that Kastle's business was dependent upon, or included, receiving retail customers or clients at its offices; rather, the evidence demonstrated that Kastle's offices were not a place for receiving customers and clients as an essential part of its business. Id. at 428, 537 S.E.2d at 316.

Consequently, the evidence does not demonstrate that the Defendants, by providing janitorial services to a building occupied by multiple tenants and in which Kastle leased space to operate a call center, were "performing work that is part of

13

[Kastle's] trade, business or occupation."  See Floyd, 203 Va. at 274, 123 S.E.2d at 372.  As a result, the Defendants were "other part[ies]" as contemplated by Code § 65.2-309 and strangers to Kastle's "particular business" of operating a call center.  See Whalen, 229 Va. at 169, 327 S.E.2d at 105; Floyd, 203 Va. at 274, 123 S.E.2d at 372; Feitig, 185 Va. at 102, 38 S.E.2d at 75.  Accordingly, we hold that the trial court erred in sustaining the Defendants' plea in bar because Napper's action against the Defendants is not barred by the workers' compensation exclusivity provision in Code § 65.2-307(A).

## III. Conclusion

We hold that the trial court erred when it sustained the Defendants' plea in bar and dismissed Napper's suit with prejudice.  Accordingly, we will reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Reversed and remanded.